## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JULIUS E. CHAMBERS,                           Case No. 1:12-cv-274
    Plaintiff,

                                 Litkovitz, M.J.
    vs.                                     (consent)

SECRETARY OF VETERANS AFFAIRS,                **ORDER**
    Defendant,

Plaintiff Julius E. Chambers brings this action pro se against defendant Eric Shinseki,

Secretary of the United States Department of Veterans Affairs (Secretary), alleging the Secretary

discriminated against him on the basis of his disability and age in violation of the Americans

with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*,[1] and the Age Discrimination in

Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* This matter is before the Court on the

Secretary's motion for summary judgment (Doc. 14), plaintiff's response in opposition (Doc.

16), and the Secretary's reply. (Doc. 19).

### I. Facts

Plaintiff is an honorably discharged veteran of the United States Marines over the age of

40 who suffers from diabetes. (Doc. 3 at 3, Complaint; Doc. 14, Ex. B at 5-7, Plaintiff's

Deposition Transcript). Plaintiff was hired by the Veterans Administration Medical Center

(VAMC) as a probationary vending machine clerk under a temporary 90-day appointment.

(Doc. 14, Ex. C, ¶ 2, Declaration of Emily Sexton; Doc. 14, Ex. D, ¶ 3, Declaration of Gary

Slucher). As a vending machine clerk, plaintiff's duties included cleaning, maintaining, and

stocking vending machines. (Doc. 14, Ex. D, ¶ 3). At the time plaintiff was hired, the VAMC

had already adopted and was implementing a computer program for the vending machines which

---

[1] As explained *infra*, plaintiff's disability discrimination claims are cognizable under the Rehabilitation Act
of 1973, 42 U.S.C. § 791 *et seq.*, rather than the ADA because he brings this action against the federal government.

required vending machine clerks to utilize a hand-held electronic device to monitor stock. *Id.*
While plaintiff successfully performed his vending machine clerk duties prior to implementation
of the hand-held devices, he had substantial difficulty in learning the new system. (Doc. 14, Ex.
B at 14-15; Doc. 14, Ex. C, ¶¶ 2-3; Doc. 14, Ex. D, ¶ 3).

Because plaintiff was considered a dedicated employee, Gary Slucher, Canteen Chief at
the VAMC, decided to transfer plaintiff to retail to see if he would be more successful in that
area. (Doc. 14, Ex. C, ¶ 4; Doc. 14, Ex. D, ¶¶ 1, 4). As a retail associate, plaintiff's duties
included running a cash register, making sales and refunds, and stocking supplies. (Doc. 14, Ex.
C, ¶ 5). Plaintiff had ongoing performance difficulties in the retail associate position, such as
doing work other than running the cash register and following instructions as to other tasks. *Id.*
Also, plaintiff's female co-workers registered complaints that plaintiff made comments about
their ages and of a sexual nature that caused them to feel uncomfortable. (Doc. 14, Ex. C, ¶ 8;
Doc. 14, Ex. D, ¶ 4).

Emily Sexton, Assistant Canteen Chief, conferred with the Retail Store Manager, Roberta
Fitters, about these complaints and plaintiff's performance. (Doc. 14, Ex. C, ¶¶ 1, 9). Upon
being presented with these issues by Ms. Sexton, Mr. Slucher decided to not extend plaintiff's
temporary appointment at the VAMC. (Doc. 14, Ex. C, ¶ 9; Doc. 14, Ex. D, ¶ 6). Mr. Slucher
opted to not renew plaintiff's appointment rather than "terminate" his employment to avoid
harming plaintiff's chances of obtaining future employment. (Doc. 14, Ex. D, ¶ 6). Mr. Slucher
was not aware that plaintiff suffered from diabetes or that he needed to take insulin or sugar pills
to manage his illness at the time he made the decision to not renew plaintiff's appointment.
(Doc. 14, Ex. D, ¶ 7). Ms. Sexton was aware that plaintiff had diabetes and carried insulin with
him, but was not aware that plaintiff needed to take sugar to manage his diabetes. (Doc. 14, Ex.

2

C, ¶ 6). Ms. Sexton states she never received a request for an accommodation from plaintiff for

his diabetes or complaints about plaintiff's work activities involving his diabetes. (Doc. 14, Ex.

C, ¶¶ 6-7).

> Plaintiff's verified complaint alleges the following:
>
> I am diabetic. I was told I had to deal with my condition on my own time. I had asked for time to check my blood sugar and to give myself shots and take sugar pills. These requests were denied.
>
> I have been discriminated against and terminated in violation of the ADA.
>
> I am over the age of 40. I was qualified for my position. I was told I was not learning a computer program fast enough and I was temporarily replaced by a significantly younger employee. I was discriminated against and terminated in violation of the ADEA.

(Doc. 3 at 3).[2] Plaintiff testified that Ms. Fritter repeatedly harassed him for taking sugar

pills during his tenure as a retail associate and told him to check his sugar levels on his

own time. (Doc. 14, Ex. B at 19, 21, 25).

**II. Summary Judgment Standard of Review**

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). Assertions of undisputed facts must be supported by citations to particular parts

of the record, including depositions, affidavits, admissions, and interrogatory answers. The party

opposing a properly supported summary judgment motion "'may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

---

[2]For summary judgment purposes, plaintiff's verified complaint carries the same weight as would an affidavit. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). However, plaintiff's response to the motion for summary judgment, which he labels an affidavit (Doc. 16 at 1, 5), is not notarized or made under penalty of perjury. Therefore, plaintiff's unsupported assertions are not admissible evidence and the Court may not consider them in ruling on the motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(4); 28 U.S.C. § 1746. *See also Finch v. Xavier University*, 689 F. Supp.2d 955, 962 (S.D. Ohio 2010) (the Court may not consider as evidence affidavits that are not notarized or sworn under penalty of perjury).

genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation omitted).

A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party need not support his motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Harstel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Nor is the Court duty bound to search the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The Court must assess "whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." *Anderson,* 477 U.S. at 249-50 (citations omitted).

4

**III. Analysis**

The Secretary seeks summary judgment on plaintiff's disability and age discrimination claims. As to plaintiff's disability claim, the Secretary asserts he is entitled to summary judgment as a matter of law because plaintiff cannot demonstrate that he was treated differently than any other employee or was terminated as a result of his diabetes. The Secretary further contends that summary judgment on plaintiff's ADEA claim is appropriate because plaintiff cannot rebut the Secretary's non-discriminatory reason for ending his employment at the VAMC. The Court will first analyze plaintiff's disability discrimination claims.

    A. <u>Plaintiff's Disability Discrimination Claims</u>

At the outset, it is necessary to determine the precise disability claims raised by plaintiff. The Secretary asserts that "since [plaintiff] did not request reasonable accommodations, his claim of disability discrimination is one of disparate treatment." (Doc. 14 at 7). The undersigned disagrees with the Secretary's interpretation and finds that plaintiff has alleged two distinct disability claims: a failure to accommodate claim and a wrongful termination claim. Plaintiff's complaint provides that his disability discrimination claims arise from his termination and the Secretary's alleged refusal to accommodate his need to manage his diabetes while at work. *See* Doc. 3 at 3 ("I am diabetic. I was told I had to deal with my condition on my own time. I had asked for time to check my blood sugar and to give myself shots and take sugar pills. These requests were denied. I have been discriminated against and terminated in violation of the ADA."). The Court therefore construes plaintiff's complaint as alleging both a failure to provide reasonable accommodation claim and a wrongful termination claim. Nevertheless, for the following reasons, the Secretary is entitled to summary judgment on both claims.

Because plaintiff seeks recovery and redress for disability discrimination by the federal government, his claims are cognizable under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, rather than the ADA as alleged in the complaint (Doc. 3 at 3). *See* 42 U.S.C. § 12111(5)(B)(i) (excluding the United States government from the definition of an "employer" under the ADA); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) ("The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination."). Nevertheless, the Rehabilitation Act explicitly incorporates the legal standards of the ADA, *see* 29 U.S.C. § 791(g), and judicial decisions applying the ADA are applicable to Rehabilitation Act cases. *See Doe v. Salvation Army in U.S.*, 531 F.3d 355, 357 (6th Cir. 2008) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004)).[3]

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). Disability discrimination under the Rehabilitation Act, which incorporates the standards of the Americans with Disability Act, includes:

---

[3] Title 29 C.F.R. § 1614.203(b) provides:

> The standards used to determine whether section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 791), has been violated in a complaint alleging nonaffirmative action employment discrimination under this part shall be the standards applied under Titles I and V (sections 501 through 504 and 510) of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. 12101, 12111, 12201), as such sections relate to employment. These standards are set forth in the Commission's ADA regulations at 29 CFR part 1630.

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A). To prevail on his failure to accommodate claim, plaintiff must first establish a prima facie case by showing:

(1) he is an individual with a handicap . . .; (2) he is qualified for the position . . .; (3) the agency was aware of his disability; (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation. Once the plaintiff has presented a prima facie case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs.

*DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004) (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997) (citations omitted)).

It is undisputed that plaintiff has diabetes mellitus. The Secretary argues there is no evidence suggesting that this condition substantially limits plaintiff such that it qualifies as a disability under the Rehabilitation Act. However, federal regulations provide that diabetes "will, as a factual matter, virtually always be found to impose a substantial limitation" on endocrine function. 29 C.F.R. § 1630.2(j)(3)(ii)-(iii). The Court will assume, for purposes of the motion for summary judgment, that plaintiff's diabetes constitutes a disability under the Act.

Even assuming plaintiff is disabled within the meaning of the Rehabilitation Act, summary judgment is nevertheless appropriate because plaintiff has failed to establish "an accommodation was needed" for his diabetic condition. *DiCarlo*, 358 F.3d at 419. Plaintiff testified that rather than face admonishment from Ms. Fitter for monitoring his blood sugar throughout the day, he was able to "compress" his monitoring into less time. (Doc. 14, Ex. B at

7

20-21). Plaintiff testified he would monitor his blood sugar right before he started work, during his break, at lunch time, and then when he went home in the evening. *Id.* Plaintiff also testified that he never formally asked for an accommodation from Ms. Fitters "because she told me I had to do it on my time so like I said, I just compressed it to my break time and my lunch time and things like that." *Id.* at 21-22. There is simply no evidence that plaintiff needed an accommodation for his diabetes to perform the essential functions of his job. *See* 29 C.F.R. § 1630.2(o)(1)(ii) (defining reasonable accommodation to include "modifications or adjustments . . . that enable a qualified individual with a disability to perform the essential functions of that position"). Plaintiff's testimony indicates he was fully able to perform his job without accommodation. Nor has plaintiff presented evidence that the self-imposed changes in the monitoring of his blood sugar interfered with the essential functions of his job or adversely impacted his health. Plaintiff's sworn testimony demonstrates that he was able to manage his diabetes on his own by re-scheduling his routine and that he did not require any reasonable accommodation from the Secretary. Because there are no genuine issues of fact as to whether plaintiff needed an accommodation for his diabetes, the Secretary is entitled to summary judgment on this claim. The Court now turns to plaintiff's disability termination claim.

To establish a wrongful termination claim under the Rehabilitation Act, a plaintiff must show that 1) he is disabled; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) he suffered an adverse employment action; 4) the employer knew or had reason to know of plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Spence v. Donahoe*, 515 F. App'x 561, 567-68 (6th Cir. 2013) (citing *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004)). The fifth element of the prima facie case may also be established by evidence showing

"similarly situated non-protected employees were treated more favorably." *Id.* (citing *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)). Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action. *Jones*, 488 F.3d at 404. If the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual. *Id.* A plaintiff must prove that his disability was a but-for cause of the employer's adverse employment action. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 323 (6th Cir. 2012).

Assuming, for argument's sake, that plaintiff has established a *prima facie* case under the Rehabilitation Act, plaintiff has nevertheless failed to show that the Secretary's stated non-discriminatory reason for not renewing his employment is pretextual. The Secretary has put forth evidence of a non-discriminatory reason for not renewing plaintiff's employment, namely plaintiff's inability to follow instructions on the job and to complete requisite job duties, and employee complaints about plaintiff's on-the-job conduct. *See* Doc. 14, Ex. C, ¶¶ 5-9; Doc. 14, Ex. D, ¶¶ 4-6. Plaintiff has failed to proffer any evidence rebutting the Secretary's non-discriminatory basis for ending his appointment at the VAMC. In the absence of any rebuttal evidence, there is no genuine issue of material fact as to the Secretary's legitimate basis for not renewing his employment. *See Hibbler v. Regional Medical Ctr. at Memphis*, 12 F. App'x 336, 340 (6th Cir. 2001) (employer entitled to summary judgment where employee fails to rebut legitimate, nondiscriminatory reason for termination). Accordingly, the Secretary is entitled to summary judgment on plaintiff's wrongful termination disability discrimination claim.

B. Age Discrimination Claim

The ADEA prohibits an employer from discharging or otherwise discriminating against any individual in the terms or conditions of his employment because of his age. 29 U.S.C. §

623(a)(1). In an age discrimination case, whether a plaintiff seeks to prove his case by direct or circumstantial evidence, he has the burden of persuasion to demonstrate "that age was the 'but-for' cause of his employer's adverse action." *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009) (citing *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 178 n.4 (2009)). Where a plaintiff seeks to establish his age discrimination claim by circumstantial evidence, the claim may be analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.2 (6th Cir. 2010) (citing *Geiger*, 579 F.3d at 622).

A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost or not gained; and 4) he was replaced by an individual outside the protected class. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). The fourth prong is modified for an age discrimination claim to require replacement by a "substantially" or "significantly" younger person, which may include an individual within the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d

10

332, 335 (6th Cir. 2003).  Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class.  *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802.  If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons but were a pretext for discrimination.  *Id.* at 804.

The Secretary contends that he is entitled to summary judgment on plaintiff's age discrimination claim because plaintiff cannot establish the fourth prong of his claim – that he was treated differently than younger employees – nor can he rebut the Secretary's proffered non-discriminatory reason for not renewing plaintiff's employment.  The undersigned agrees.

As to plaintiff's inability to establish a *prima facie* case, the undersigned notes that upon review of plaintiff's complaint, it is apparent that plaintiff's age discrimination claim involves his transfer from vending machine clerk to retail associate subsequent to the implementation of the computer inventory program and not the Secretary's non-renewal of his appointment at the VAMC.  *See* Doc. 3 at 3 ("I am over the age of 40.  I was qualified for my position.  I was told I was not learning a computer program fast enough and I was temporarily replaced by a significantly younger employee.").  "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).  Here, plaintiff testified that while he could not fully recall, he did not believe that he was paid a different wage for the retail position. (Doc. 14, Ex. B at 17).  Nor is there evidence that plaintiff's benefits changed or that the change of title

11

from "vending machine clerk" to "retail associate" was a demotion. As for working different hours, it appears that plaintiff's job became *less* demanding after the transfer as he no longer had to, per his testimony, arrive early and stay late to accomplish his duties. *See* Doc. 14, Ex. B at 12-14. Accordingly, plaintiff has failed to demonstrate that the transfer to the retail store was an adverse employment action and he cannot establish a *prima facie* case of age discrimination.

To the extent that plaintiff's age discrimination claim stems from the Secretary's non-renewal of his temporary employment, plaintiff has failed to put forth evidence that he was replaced at the sales position by a "substantially" or "significantly" younger person for purposes of his prima facie case. *O'Connor*, 517 U.S. at 312-313; *Grosjean*, 349 F.3d at 335. There is simply no evidence in the record from which the Court can conclude that the Secretary hired a person younger than plaintiff to fill his position as a retail sales associate. Without demonstrating this requisite element, plaintiff's age discrimination claim fails as a matter of law.

Lastly, as noted above in regard to the disability claim, even if plaintiff had established a *prima facie* age discrimination claim, the Secretary is entitled to summary judgment because plaintiff has failed to rebut the proffered non-discriminatory basis for his non-renewal. As with the disability discrimination claims, upon satisfying his *prima facie* burden and being presented with a legitimate non-discriminatory basis for the non-renewal, plaintiff was required "to show that the [Secretary's] non-discriminatory explanation is a mere pretext for intentional age discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). Plaintiff has failed to raise a genuine issue of fact that his temporary employment was not renewed due to performance and conduct problems. *See* Doc. 14, Ex. C, ¶¶ 5-9; Doc. 14, Ex. D, ¶¶ 4-6. Indeed, in his brief in opposition plaintiff does not even address the Secretary's evidence or assert that his age was the basis for his non-renewal. *See* Doc. 16 at 5-8 (the only discussion

of age in plaintiff's brief is that his co-workers at the retail store were "young"). The Secretary is entitled to summary judgment on plaintiff's age discrimination claim as plaintiff has failed to establish a *prima facie* case or rebut the Secretary's non-discriminatory basis for not renewing his employment.

## III. Conclusion

For the above-stated reasons, the Secretary's motion for summary judgment (Doc. 14) is **GRANTED**. This action is hereby **DISMISSED** on the docket of the Court.

The Court certifies pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of this Order would not be taken in good faith and plaintiff is therefore denied leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

**IT IS SO ORDERED.**

Date: 8/21/13

Karen L. Litkovitz
United States Magistrate Judge

13

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

Julius E. Chambers
PO Box 36269
Cinti, OH 45236

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☑ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7011 3500 0001 5345 9374

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540